UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL THOMAS, | CIVIL ACTION NO. |
| **Plaintiff,** | |
| v. | |
| CONAGRA FOODS, INC., CONAGRA BRANDS, INC., DS CONTAINERS, INC. and FULL-FILL INDUSTRIES, LLC, | APRIL 13, 2020 |
| **Defendants.** | JURY TRIAL DEMANDED |

## COMPLAINT

### I.     INTRODUCTION

1.      This products liability lawsuit seeks general damages, special damages and punitive damages on behalf of Plaintiff CAROL THOMAS, who was burned and severely injured by a can of Member's Mark Cooking Spray, which Defendants, CONAGRA FOODS, INC., CONAGRA BRANDS, INC., DS CONTAINERS, INC. and FULL-FILL INDUSTRIES, LLC (collectively, the "DEFENDANTS"), designed, developed manufactured, tested, assembled, labeled, filled, packaged, marketed, sold and distributed.

2.      This is an action for damages relation to defendants' development, testing, assembling, filling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective Member's Mark aerosol canister.

### II.     PARTIES

3.      Plaintiff, CAROL THOMAS, is a citizen and resident of Livingston County, State of New York.

1

4.      At all times relevant to this complaint, Defendant CONAGRA FOODS, INC. was a Delaware corporation with its principal place of business in Chicago, Illinois. It is currently a registered trade name for Defendant Conagra Brands, Inc.

5.      At all times relevant to this complaint, Defendant CONAGRA BRANDS, INC. was a Delaware corporation with its principal place of business in Chicago, Illinois. It was formerly known as ConAgra Foods, Inc.

6.      Defendant CONAGRA BRANDS, INC. is the successor in interest to CONAGRA FOODS, INC.

7.      CONAGRA BRANDS, INC. is located at 222 W Merchandise Mart Plaza, Chicago, IL 60654.

8.      Conagra is one of America's largest food companies.

9.      At all times relevant to this complaint, Defendant DS CONTAINERS, INC. was a Japanese-American corporation with its principal place of business at 1789 Hubbard Avenue, Batavia, IL 60510.   DS CONTAINERS, INC. is in the business of selling, designing, manufacturing, assembling and/or distributing its own and other products throughout New York and conducting business in New York on a regular basis.

10.      At all times relevant to this complaint, Defendant FULL-FILL INDUSTRIES, LLC was an Illinois limited liability corporation with its principal place of business at 400 N. Main Street, Henning, IL 61848.   FULL-FILL INDUSTRIES, LLC is in the business of selling, manufacturing, filling, packaging and/or distributing its own and other products throughout New York and conducting business in New York on a regular basis.

2

## III.     JURISDICTION

11.     This court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332(a) and 1367.  Plaintiff and Defendants are citizens of different states and the amount in controversy on each claim exceeds $75,000.00, exclusive of interests and costs.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that the event at issue occurred in this district; and Defendants transact business in the State of New York.

## IV.     CLAIMS FOR RELIEF

13.     At all times relevant to the allegations in this complaint, DEFENDANTS were and are in the business of designing, developing, manufacturing, testing, assembling, labeling, filling, packaging, marketing, advertising, promoting selling and distributing the sale of various food brands, including Member's Mark Cooking Spray.

14.     At all times relevant to this complaint, Defendants CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. sold and distributed various branded and private label Cooking Sprays to retailers throughout the United States.

15.     At all times relevant to this complaint, Defendant DS CONTAINERS, INC. manufactured vented DOT-2Q cooking spray cans, including Cooking Spray cans for the Conagra Defendants and performed various performance, tolerance and control testing on the products.

16.     At all times relevant to this complaint, Defendant FULL-FILL INDUSTRIES, LLC was a leading manufacturer of cooking oil sprays for major consumer and private brand customers and foodservice operators.

17.     At all times relevant to this complaint, Defendant FULL-FILL INDUSTRIES, LLC was the leading provider of food aerosol products in the United States.

18.     At all times relevant to this complaint, Defendant FULL-FILL INDUSTRIES, LLC filled, assembled and packaged vented DOT-2Q cooking spray cans, including Cooking Spray cans

3

for the Conagra Defendants and performed various performance, tolerance and control testing on the products.

19.     DEFENDANTS designed, manufactured, tested, filled, labeled and/or sold the canister of Cooking Spray that exploded and is at issue in this case.

20.     DEFENDANTS designed, manufactured, tested, filled, labeled, promoted and/or sold Cooking Spray for use in consumer and commercial kitchens as well as in other environments such as cookouts and grilling.

21.     The Cooking Spray reached Plaintiff without substantial change in its condition and was stored and used in a reasonably foreseeable manner at the time and prior to the incident in question.

22.     At the time of the incident in question, the Cooking Spray was some distance away from a heat source in the campground kitchen.

23.     At all times relevant to Plaintiff's claims, Plaintiff used reasonable care with the Cooking Spray.

24.     On or about April 15, 2017, the canister of Cooking Spray suddenly and without warning began spraying its extremely flammable contents through the u-shaped vents on the bottom of the can causing a flash fire, flames and/or explosion causing burns and injuries to Plaintiff.

25.     At the time of the venting, explosion, flash fire and injuries, CAROL THOMAS was working in a campground kitchen located at Camp Stella Maris, 4395 E. Lake Road, Livonia, New York 14487.

### COUNT I – STRICT PRODUCTS LIABILITY – DESIGN DEFECT
**(Plaintiff v. Conagra Foods, Inc. & Conagra Brands, Inc.)**

26.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

4

27.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. have a duty to place into the stream of commerce, manufacture, test, fill, label, distribute, market, promote, and sell Cooking Spray and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

28.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. did in fact design, manufacture, test, fill, label, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff and/or Plaintiff's Employer.

29.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

30.     At the time the Cooking Spray left the possession of CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition. These defects include but are not limited to the following:

    a.    The Cooking Spray contains vents, metal thickness and other design features that make the container capable of releasing its contents under conditions where other cooking spray can designs do not have such risk;

    b.    The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;

    c.    The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' other cooking spray can designs;

    d.    The Cooking Spray was capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

    e.    The Cooking Spray used flammable and dangerous propellants that posed an unreasonable and unnecessary danger when other propellants do not have such risk;

f.   The Cooking Spray was not designed to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or storage;

g.   The Cooking Spray releases its contents in an uncontrolled and rapid manner posing an unreasonable and unnecessary danger when other cooking spray can designs do not have such risk;

h.   The Cooking Spray releases its contents simultaneously with the can everting which poses an unreasonable and unnecessary danger and no warning to those in its vicinity when other cooking spray can designs do not have such risk;

i.   Safer alternative cooking spray can designs existed that do not present the same risks associated with the Cooking Spray;

j.   Any alleged benefits of the Cooking Spray are outweighed by the risks of the Cooking Spray releasing their dangerous contents;

k.   The dangers associated with the Cooking Spray outweigh any alleged utility in the Cooking Spray's design.  The nature and magnitude of the risk of the can venting and causing a fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including stoves/grills;

l.   The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around stoves/grills, and had no adequate warnings about possible dangers of doing so;

m.   The likelihood of the Cooking Spray causing and/or contributing to a fire due to venting was high in light of the intended and reasonably foreseeable use of the Cooking Spray product around stoves/grills and other heating sources;

n.   The flammability of the Cooking Spray product's ingredients and the Cooking Spray product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;

o.   At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with respect to the flammability of the ingredients, and alternative can designs would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product; and

p.   Were otherwise defective, unsafe and unreasonably dangerous.

31.   Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA

BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

32.     Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

33.     Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

34.     Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

35.     At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

36.     Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

37.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. as designer, manufacturer, filler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

38.     Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, marketer, promoter, supplier, distributor and seller:  CONAGRA FOODS, INC. and CONAGRA BRANDS, INC.

39.     The foregoing wrongful acts or omissions by CONAGRA FOODS, INC. and

CONAGRA BRANDS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

## COUNT II – STRICT LIABILITY MANUFACTURING DEFECT
### (Plaintiff v. Conagra Foods, Inc. & Conagra Brands, Inc.)

40.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

41.     The Cooking Spray is defective and unreasonably dangerous because the container was manufactured outside of its manufacturing specifications.

42.     The Cooking Spray contained manufacturing defects because the device differed from the design and specifications under which the device was intended to be manufactured.

43.     The Cooking Spray contained a manufacturing defect in that the metal thickness, depth of the u-shaped vent scoring and other components were not manufactured in conformity with the applicable design and specifications.

44.     The Cooking Spray manufacturing defect was present when it left Defendant's custody and control.

45.     The Cooking Spray reached Plaintiff without substantial change or modification to the Cooking Spray container.

8

46.     The foregoing wrongful acts or omissions by CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish.   Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment.  Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

## COUNT III – STRICT PRODUCTS LIABILITY – FAILURE TO WARN
### (Plaintiff v. Conagra Foods, Inc. & Conagra Brands, Inc.)

47.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

48.     At all times relevant hereto, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC., designed, manufactured, filled, tested, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray.

49.     At all times relevant hereto, the dangerous propensities of the vented Cooking Spray containers were known to CONAGRA FOODS, INC. and CONAGRA BRANDS, INC., or were reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, tested, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray, and not known to ordinary consumer/user who would be expected to use the Cooking Spray.

50.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. have a duty to provide adequate, appropriate and accurate warnings on the Cooking Spray products they place into the stream of commerce, manufacture, fill, test, label, distribute, market, promote, and sell.

51.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were responsible, in whole or in part, for the warnings and cautions on the Cooking Spray.

52.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

53.     At the time the Cooking Spray left the possession of CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition.

54.     At the time the Cooking Spray left the possession of CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. and the time the Cooking Spray entered the stream of commerce, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. failed to provide adequate, appropriate and accurate warnings to inform consumers and users of the Cooking Spray how to safely use the Cooking Spray and/or minimize the dangers and risks associated with the Cooking Spray.

55.     At all times relevant to this action, the Cooking Spray as distributed by CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. was a defective, unsafe and unreasonably dangerous product, as CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. failed to provide appropriate and adequate warnings and instructions to render the products reasonably safe for their ordinary, intended, and reasonably foreseeable uses; in particular – the common, foreseeable and intended use of cooking sprays.

56.     At all times relevant to this action, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. did in fact design, manufacture, fill, test, label, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff and/or Plaintiff's Employer.

57.     At all times relevant to this action, the dangerous propensities of the vented Cooking Spray containers were known to CONAGRA FOODS, INC. and CONAGRA BRANDS, INC., or reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, tested, labeled, marketed, promoted, supplied, distributed and/or sold the respective Cooking Spray products, and not known to ordinary consumers who would be expected to use the product.

58.     At the time the Cooking Spray left the possession of CONAGRA FOODS, INC. and CONAGRA BRANDS, INC., the Cooking Spray was defective, unsafe and unreasonably dangerous due to providing inadequate and inaccurate Cooking Spray product warnings.  These defects include but are not limited to the following:

      a.    The Cooking Spray warnings fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

      b.    The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know a safe distance from a heat source to which the Cooking Spray can be safely placed;

      c.    The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know the temperatures to which the Cooking Spray can be safely exposed without the risk of releasing the Cooking Spray's contents;

      d.    The Cooking Spray warnings fail to appropriately inform users of the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves/grills;

      e.    The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

    f.    The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the combustibility and flammability of the propellants used in the Cooking Spray;

    g.    The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the dangers and risks associated with the propellants used in the Cooking Spray;

    h.    The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking Spray product; and

    i.    Otherwise failed to provide adequate, appropriate and/or accurate warnings regarding the use of, risks and/or dangers associated with the Cooking Spray.

59.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

60.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

61.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

62.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

63.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. knew the distance from a heat source to which the Cooking Spray could be safely placed without risk of releasing its contents.

64.     Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. knew the temperature to which the Cooking Spray could be safely exposed without risk of releasing its contents.

65.     At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

66.     Plaintiff followed the Cooking Spray warnings and precautions.

67.     Plaintiff could not have discovered any defect in the Cooking Spray warnings through the exercise of due care.

68.     Had adequate, appropriate and accurate warnings been provided, the incident and injuries would have been avoided.

69.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. as designer, manufacturer, filler, tester, labeler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

70.      Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, tester, labeler, marketer, promoter, supplier, distributor and seller:  CONAGRA FOODS, INC. and CONAGRA BRANDS, INC.

71.     The foregoing wrongful acts or omissions by CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and

has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment.  Plaintiff was also caused to lose earnings and will continue to lose earnings.  Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT IV – STRICT LIABILITY – NON-SPECIFIC DEFECT
### (Plaintiff v. Conagra Foods, Inc. & Conagra Brands, Inc.)

72.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

73.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. had a duty to design, manufacture, fill, test, label, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray that was not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, tested, labeled, distributed, marketed, and sold.

74.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. did in fact design, manufacture, fill, test, label, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray to Plaintiff and/or Plaintiff's Employer.

75.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing, selling and/or placing into the stream of commerce to reach consumers in the state of New York, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

76.     At the time the Cooking Spray left the possession of Defendant and the time Cooking Spray entered the stream of commerce, the Cooking Spray was in an unsafe, unreasonably dangerous and defective condition.  These defects include but are not limited to the following:

a.      In releasing its contents at regular temperatures and causing a flash fire, the Cooking Spray Can failed to perform as intended;

14

b.      The Cooking Spray Can design and/or manufacture is more prone to release its contents than other can designs;

c.      There are no other causes for the Cooking Spray Can for releasing its contents at regular temperatures and causing a flash fire that are not attributable to Defendant;

d.      The Cooking Spray Can failed to perform as intended, and subjected Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person; and/or

e.      The Cooking Spray Can otherwise possessed a condition which made it unreasonably dangerous for its intended and foreseeable use.

77.     At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

78.     Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care

79.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. as designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller of Cooking Spray are held to the level of knowledge of an expert in their field.

80.     Plaintiff did not have substantially the same knowledge as the designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller: CONAGRA FOODS, INC. and CONAGRA BRANDS, INC.

81.     The foregoing wrongful acts or omissions by CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while

endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

## COUNT V – NEGLIGENCE
### (Plaintiff v. Conagra Foods, Inc. & Conagra Brands, Inc.)

82.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

83.     At all times relevant, it was the duty of CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. to exercise due care in designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and/or selling Cooking Spray products such that they would be reasonably safe for their intended use.

84.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. negligence in the design, manufacture, testing, filling, labeling, marketing, promotion, supplying, distribution and/or sale of the Cooking Spray products includes but is not limited to the following:

  a.     Negligently failed to appropriately inform users of the dangers associated with the Cooking Spray;

  b.     Withheld and/or misrepresented material facts regarding the Cooking Spray's safety and fitness for use around stoves/grills and other heating sources when in fact they are not safe for use in these areas;

  c.     Misrepresented material facts regarding the Cooking Spray's safety by withholding information regarding adverse events and information about incidents of venting and injury caused by the cans;

  d.     After receiving post-marketing incident reports and/or testing data, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC., knew, or in the exercise of reasonable care, should have known that there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the Cooking Spray product and failed to communicate or warn users of this information;

  e.     Failed to halt the use of dangerous, flammable and/or combustible propellants

in Cooking Spray when it knew they were dangerous;

f.   Continued to use dangerous, flammable and/or combustible propellants in Cooking Spray in the United States when it knew they were dangerous and had been prohibited from using the same propellants in cooking spray containers outside the United States;

g.   Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves, grills and heat sources;

h.   Negligently designing and manufacturing the Cooking Spray container making it capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;

i.   Negligently designing and manufacturing the Cooking Spray container making it capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

j.   Negligently designing and manufacturing the Cooking Spray container so that it is unable to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or storage.

k.   Negligently designing the Cooking Spray warnings so that they fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

l.   Failed to provide adequate warnings concerning the risk of venting, risk of fire, and risk of burn injuries;

m.   Failed to provide adequate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

n.   Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking Spray product;

o.   Failed to provide adequate instructions to persons cooking with and around their Cooking Spray products;

p.   Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around Cooking Spray products;

q.   Failed to conduct adequate testing on their Cooking Spray products to determine the venting hazards to which consumers and individuals such as Plaintiff may be exposed to while cooking with and/or around their products;

17

r.     Failed to monitor and analyze what post-marketing reports observed with regard to individuals cooking with and around DEFENDANTS' Cooking Spray products and/or substantially similar products;

s.     Used a canister which was not designed and/or manufactured to withstand a pressure of at least 270 psig at 130 degrees Fahrenheit without bursting in violation of 49 C.F.R. §178.33a(3)(ii); and

t.     Were otherwise negligent in the design, manufacture, marketing, advertisement, promotion, sale and distribution of the Cooking Spray products.

85.    CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. knew or had reason to know that Plaintiff and/or Plaintiff's Employer, as a member of the general public for whose use the Cooking Spray was placed into interstate commerce, would be likely to use or be around the Cooking Spray in a manner described in this Complaint.

86.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

87.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

88.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

89.    Prior to the incident set forth herein, CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

90.    CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's presence in the vicinity of and/or foreseeable use of the Cooking Spray, which danger would not

be obvious to the general public.

91.     Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately, and there was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

92.     Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

93.     CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. as designers, manufacturers, testers, fillers, labelers, marketers, promoters, suppliers, distributers and sellers of food products are held to the level of knowledge of an expert in their field.

94.     Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, tester, labeler, marketer, promoter, supplier, distributor and seller:  CONAGRA FOODS, INC. and CONAGRA BRANDS, INC.

95.     The foregoing wrongful acts or omissions by CONAGRA FOODS, INC. and CONAGRA BRANDS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment.  Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

## COUNT VI – STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### (Plaintiff v. DS Containers, Inc.)

96.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

97.     DS CONTAINERS, INC. has a duty to  place into the stream of  commerce, manufacture, distribute, market, promote, and sell Cooking Spray and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, filled, labeled, distributed, marketed, and sold.

98.     DS CONTAINERS, INC. did in fact design, manufacture, fill, test, label, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff.

99.     DS CONTAINERS, INC. expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff, without substantial change in the condition

100.    At the time the Cooking Spray left the possession of DS CONTAINERS, INC. and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition.  These defects include but are not limited to the following:

> a.    The Cooking Spray contains vents, metal thickness and other design features that make the container capable of releasing its contents under conditions where other cooking spray can designs do not have such risk;
>
> b.    The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;
>
> c.    The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' other cooking spray can designs;
>
> d.    The Cooking Spray was capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

e.   The Cooking Spray used flammable and dangerous propellants that posed an unreasonable and unnecessary danger when other propellants do not have such risk;

f.   The Cooking Spray was not designed to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or storage;

g.   The Cooking Spray releases its contents in an uncontrolled and rapid manner posing an unreasonable and unnecessary danger when other cooking spray can designs do not have such risk;

h.   The Cooking Spray releases its contents simultaneously with the can everting which poses an unreasonable and unnecessary danger and no warning to those in its vicinity when other cooking spray can designs do not have such risk;

i.   Safer alternative cooking spray can designs existed that do not present the same risks associated with the Cooking Spray;

j.   Any alleged benefits of the Cooking Spray are outweighed by the risks of the Cooking Spray releasing their dangerous contents;

k.   The dangers associated with the Cooking Spray outweigh any alleged utility in the Cooking Spray's design. The nature and magnitude of the risk of the can venting and causing a fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including stoves/grills;

l.   The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around stoves/grills, and had no adequate warnings about possible dangers of doing so;

m.   The likelihood of the Cooking Spray causing and/or contributing to a fire due to venting was high in light of the intended and reasonably foreseeable use of the Cooking Spray product around stoves/grills and other heating sources;

n.   The flammability of the Cooking Spray product's ingredients and the Cooking Spray product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;

o.   At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with respect to the flammability of the ingredients, and alternative can designs would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product; and

p.   Were otherwise defective, unsafe and unreasonably dangerous.

101.    At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

102.    Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

103.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

104.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

105.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

106.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

107.    Pursuant to DOT regulations, Sections 178.33a and 173.306, the test expectation for DOT 2Q empty aerosol cans with a vented bottom is a minimum 180 psig buckle.

108.    DS CONTAINERS, INC. verifies that the vented end of DOT-2Q empty aerosol cans provides for a controlled release of pressure and that a burst does not occur.

109.    Regulations require DS CONTAINERS, INC. to conduct destructive testing of one can from each lot of 25,000 cans or less.  When a can does not initially meet the DOT regulations,

22

DS CONTAINERS, INC. has the option to retest 10 cans from the same lot or designate that the cans/lot is non-compliant and scrap the cans.  In the event a retest takes place, if any one of the ten cans fail the retest, the can/lot is deemed non-compliant and is scrapped.

110.   DS CONTAINERS, INC. as designer, manufacturer, filler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

111.   Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller:  DS CONTAINERS, INC.

112.   The foregoing wrongful acts or omissions by DS CONTAINERS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT VII – STRICT LIABILITY – MANUFACTURING DEFECT
#### (Plaintiff v. DS Containers, Inc.)

113.   Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

114.   The Cooking Spray is defective because the container was manufactured outside of

its manufacturing specifications.

115.    The Cooking Spray contained manufacturing defects because the device differed from the design and specifications under which the device was intended to be manufactured.

116.    The Cooking Spray contained a manufacturing defect in that the metal thickness, depth of the u-shaped vent scoring and other components were not manufactured in conformity with the applicable design and specifications.

117.    The Cooking Spray manufacturing defect was present when it left Defendant's custody and control.

118.    The Cooking Spray reached Plaintiff without substantial change or modification to the Cooking Spray container.

119.    The foregoing wrongful acts or omissions by DS CONTAINERS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT VIII – STRICT PRODUCTS LIABILITY – FAILURE TO WARN
**(Plaintiff v. DS Containers, Inc.)**

120.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

121.    At all times relevant hereto, DS CONTAINERS, INC. designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray.

122.    At all times relevant hereto, the dangerous propensities of the vented Cooking Spray containers were known to DS CONTAINERS, INC., or were reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray, and not known to ordinary consumer/user who would be expected to use the Cooking Spray.

123.    DS CONTAINERS, INC. had a duty to provide adequate, appropriate and accurate warnings on the Cooking Spray products they place into the stream of commerce, manufacture, label, distribute, market, promote, and sell.

124.    DS CONTAINERS, INC. was responsible, in whole or in part, for the warnings and cautions on the Cooking Spray.

125.    DS CONTAINERS, INC. expected the Cooking Spray it was designing, manufacturing, filling, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

126.    At the time the Cooking Spray left the possession of DS CONTAINERS, INC. and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition.

127.    At the time the Cooking Spray left the possession of DS CONTAINERS, INC. and the time the Cooking Spray entered the stream of commerce, DS CONTAINERS, INC. failed to provide adequate, appropriate and accurate warnings to inform consumers and users of the

Cooking Spray how to safely use the Cooking Spray and/or minimize the dangers and risks associated with the Cooking Spray.

128.    At all times relevant to this action, the Cooking Spray as distributed by DS CONTAINERS, INC. was a defective and unreasonably dangerous product, as DS CONTAINERS, INC. failed to provide appropriate and adequate warnings and instructions to render the products reasonably safe for their ordinary, intended, and reasonably foreseeable uses; in particular – the common, foreseeable and intended use of cooking sprays.

129.    At all times relevant to this action, DS CONTAINERS, INC. did in fact design, manufacture, fill, label, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff and/or Plaintiff's Employer.

130.    At all times relevant to this action, the dangerous propensities of the vented Cooking Spray containers were known to DS CONTAINERS, INC., or reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold the respective Cooking Spray products, and not known to ordinary consumers who would be expected to use the product.

131.    At the time the Cooking Spray left the possession of DS CONTAINERS, INC., the Cooking Spray was defective, unsafe and unreasonably dangerous due to providing inadequate and inaccurate Cooking Spray product warnings.  These defects include but are not limited to the following:

      a.     The Cooking Spray warnings fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

      b.     The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know a safe distance from a heat source to which the Cooking Spray can be safely placed;

c.   The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know the temperatures to which the Cooking Spray can be safely exposed without the risk of releasing the Cooking Spray's contents;

d.   The Cooking Spray warnings fail to appropriately inform users of the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves/grills;

e.   The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

f.   The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the combustibility and flammability of the propellants used in the Cooking Spray;

g.   The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the dangers and risks associated with the propellants used in the Cooking Spray;

h.   The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking Spray product; and

i.   Otherwise failed to provide adequate, appropriate and/or accurate warnings regarding the use of, risks and/or dangers associated with the Cooking Spray.

132.   Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

133.   Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

134.   Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

135.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

136.    Prior to the incident set forth herein, DS CONTAINERS, INC. knew the distance from a heat source to which the Cooking Spray could be safely placed without risk of releasing its contents.

137.    Prior to the incident set forth herein, DS CONTAINERS, INC. knew the temperature to which the Cooking Spray could be safely exposed without risk of releasing its contents.

138.    At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

139.    Plaintiff followed the Cooking Spray warnings and precautions.

140.    Plaintiff could not have discovered any defect in the Cooking Spray warnings through the exercise of due care.

141.    Had adequate, appropriate and accurate warnings been provided, the incident and injuries would have been avoided.

142.    DS CONTAINERS, INC. as designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

143.    Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller:  DS CONTAINERS, INC.

144.     The foregoing wrongful acts or omissions by DS CONTAINERS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT IX – STRICT LIABILITY – NON-SPECIFIC DEFECT
#### (Plaintiff v. DS Containers, Inc.)

145.     Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

146.     DS CONTAINERS, INC.  had a duty to design, manufacture, fill, test, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray that was not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, labeled, distributed, marketed, and sold.

147.     DS CONTAINERS, INC. did in fact design, manufacture, fill, test, label, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray to Plaintiff and/or Plaintiff's Employer.

148.     DS CONTAINERS, INC. expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing, selling and/or placing into the stream of commerce to reach, and it did in fact reach, consumers in the state

of New York, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

149.   At the time the Cooking Spray left the possession of Defendant and the time Cooking Spray entered the stream of commerce, the Cooking Spray was in an unsafe, unreasonably dangerous and defective condition.  These defects include but are not limited to the following:

   a.   In releasing its contents at regular temperatures and causing a flash fire, the Cooking Spray Can failed to perform as intended;

   b.   The Cooking Spray Can design and/or manufacture is more prone to release its contents than other can designs;

   c.   There are no other causes for the Cooking Spray Can for releasing its contents at regular temperatures and causing a flash fire that are not attributable to Defendant;

   d.   The Cooking Spray Can failed to perform as intended, and subjected Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person; and/or

   a.   The Cooking Spray Can otherwise possessed a condition which made it unreasonably dangerous for its intended and foreseeable use.

150.   At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

151.   Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care

152.   DS CONTAINERS, INC. as designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller of Cooking Spray are held to the level of knowledge of an expert in their field.

153.   Plaintiff did not have substantially the same knowledge as the designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller: DS CONTAINERS, INC.

154.   The foregoing wrongful acts or omissions by DS CONTAINERS, INC. were a

substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

**COUNT X – NEGLIGENCE**
**(Plaintiff v. DS Containers, Inc.)**

155.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

156.    At all times relevant, it was the duty of DS CONTAINERS, INC. to exercise due care in designing, manufacturing, filling, labeling, marketing, promoting, supplying, distributing and/or selling Cooking Spray products such that they would be reasonably safe for their intended use.

157.    DS CONTAINERS, INC.'s negligence in the design, manufacture, testing, filling, labeling, marketing, promotion, supplying, distribution and/or sale of the Cooking Spray products includes but is not limited to the following:

a.    Negligently failed to appropriately inform users of the dangers associated with the Cooking Spray;

b.    Withheld and/or misrepresented material facts regarding the Cooking Spray's safety and fitness for use around stoves/grills and other heating sources when in fact they are not safe for use in these areas;

c.     Misrepresented material facts regarding the Cooking Spray's safety by withholding information regarding adverse events and information about incidents of venting and injury caused by the cans;

d.     After receiving post-marketing incident reports and/or testing data, DS CONTAINERS, INC., knew, or in the exercise of reasonable care, should have known that there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the Cooking Spray product and failed to communicate or warn users of this information;

e.     Failed to halt the use of dangerous, flammable and/or combustible propellants in Cooking Spray when it knew they were dangerous;

f.     Continued to use dangerous, flammable and/or combustible propellants in Cooking Spray in the United States when it knew they were dangerous and had been prohibited from using the same propellants in cooking spray containers outside the United States;

g.     Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves, grills and heat sources;

h.     Negligently designing and manufacturing the Cooking Spray container making it capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;

i.     Negligently designing and manufacturing the Cooking Spray container making it capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

j.     Negligently designing and manufacturing the Cooking Spray container so that it is unable to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or storage;

k.     Negligently designing the Cooking Spray warnings so that they fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

l.     Failed to provide adequate warnings concerning the risk of venting, risk of fire, and risk of burn injuries;

m.     Failed to provide adequate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

n.     Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking

Spray product;

o.   Failed to provide adequate instructions to persons cooking with and around their Cooking Spray products;

p.   Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around Cooking Spray products;

q.   Failed to conduct adequate testing on their Cooking Spray products to determine the venting hazards to which consumers and individuals such as Plaintiff may be exposed to while cooking with and/or around their products;

r.   Failed to monitor and analyze what post-marketing reports observed with regard to individuals cooking with and around DEFENDANTS' Cooking Spray products and/or substantially similar products;

s.   Used a canister which was not designed and/or manufactured to withstand a pressure of at least 270 psig at 130 degrees Fahrenheit without bursting in violation of 49 C.F.R. §178.33a(3)(ii); and

t.   Were otherwise negligent in the design, manufacture, marketing, advertisement, promotion, sale and distribution of the Cooking Spray products.

158.   DS CONTAINERS, INC. knew or had reason to know that Plaintiff and/or Plaintiff's Employer, as a member of the general public for whose use the Cooking Spray was placed into interstate commerce, would be likely to use or be around the Cooking Spray in a manner described in this Complaint.

159.   DS CONTAINERS, INC. knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's presence in the vicinity of and/or foreseeable use of the Cooking Spray, which danger would not be obvious to the general public.

160.   Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately, and there was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

161.   DS CONTAINERS, INC. tested DOT-2Q bottom vented cans/lots produced for Conagra and others prior to distribution.

162.   DS CONTAINERS, INC. produced DOT-2Q bottom vented cans/lots for Conagra

and others that were tested and determined to be non-compliant.

163.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

164.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

165.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

166.    Prior to the incident set forth herein, DS CONTAINERS, INC. was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs

167.    Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

168.    Pursuant to DOT regulations, Sections 178.33a and 173.306, the test expectation for DOT 2Q empty aerosol cans with a vented bottom is a minimum 180 psig buckle.

169.    DS CONTAINERS, INC. verifies that the vented end of DOT-2Q empty aerosol cans provides for a controlled release of pressure and that a burst does not occur.

170.    Regulations require DS CONTAINERS, INC. to conduct destructive testing of one can from each lot of 25,000 cans or less.  When a can does not initially meet the DOT regulations, DS CONTAINERS, INC. has the option to retest 10 cans from the same lot or designate that the cans/lot is non-compliant and scrap the cans.  In the event a retest takes place, if any one of the ten cans fail the retest, the can/lot is deemed non-compliant and is scrapped.

171.    DS CONTAINERS, INC. tested DOT-2Q bottom vented cans/lots produced for Conagra.

172.    DS CONTAINERS, INC. produced DOT-2Q bottom vented cans/lots for Conagra that were tested and determined to be non-compliant.

173.    DS CONTAINERS, INC. as designers, manufacturers, testers, fillers, marketer, promoters, suppliers, distributers and sellers of food products are held to the level of knowledge of an expert in their field.

174.    Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, tester, labeler, marketer, promoter, supplier, distributor and seller:  DS CONTAINERS, INC.

175.    The foregoing wrongful acts or omissions by DS CONTAINERS, INC. were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT XI – STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### (Plaintiff v. Full-Fill Industries, LLC)

176.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

177.     FULL-FILL INDUSTRIES, LLC has a duty to place into the stream of commerce, manufacture, fill, test, label, distribute, market, promote, and sell Cooking Spray and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

178.     FULL-FILL INDUSTRIES, LLC did in fact design, manufacture, fill, test, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff.

179.     FULL-FILL INDUSTRIES, LLC expected the Cooking Spray it was designing, manufacturing, filling, testing, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff, without substantial change in the condition

180.     At the time the Cooking Spray left the possession of FULL-FILL INDUSTRIES, LLC and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition.   These defects include but are not limited to the following:

      a.     The Cooking Spray contains vents, metal thickness and other design features that make the container capable of releasing its contents under conditions where other cooking spray can designs do not have such risk;

      b.     The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;

      c.     The Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' other cooking spray can designs;

      d.     The Cooking Spray was capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

      e.     The Cooking Spray used flammable and dangerous propellants that posed an unreasonable and unnecessary danger when other propellants do not have such risk;

      f.     The Cooking Spray was not designed to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or

36

storage;

g.  The Cooking Spray releases its contents in an uncontrolled and rapid manner posing an unreasonable and unnecessary danger when other cooking spray can designs do not have such risk;

h.  The Cooking Spray releases its contents simultaneously with the can everting which poses an unreasonable and unnecessary danger and no warning to those in its vicinity when other cooking spray can designs do not have such risk;

i.  Safer alternative cooking spray can designs existed that do not present the same risks associated with the Cooking Spray;

j.  Any alleged benefits of the Cooking Spray are outweighed by the risks of the Cooking Spray releasing their dangerous contents;

k.  The dangers associated with the Cooking Spray outweigh any alleged utility in the Cooking Spray's design.  The nature and magnitude of the risk of the can venting and causing a fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including stoves/grills;

l.  The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around stoves/grills, and had no adequate warnings about possible dangers of doing so;

m.  The likelihood of the Cooking Spray causing and/or contributing to a fire due to venting was high in light of the intended and reasonably foreseeable use of the Cooking Spray product around stoves/grills and other heating sources;

n.  The flammability of the Cooking Spray product's ingredients and the Cooking Spray product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;

o.  At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with respect to the flammability of the ingredients, and alternative can designs would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product; and

p.  Were otherwise defective, unsafe and unreasonably dangerous.

181.  At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable

cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

182.    Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

183.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

184.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

185.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

186.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs

187.    FULL-FILL INDUSTRIES, LLC as designer, manufacturer, filler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

188.    Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, tester, labeler, marketer, promoter, supplier, distributor and seller:  FULL-FILL INDUSTRIES, LLC.

189.    The foregoing wrongful acts or omissions by FULL-FILL INDUSTRIES, LLC were a substantial factor in bringing about the Cooking Spray canister explosion which caused

Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

### COUNT XII – STRICT LIABILITY – MANUFACTURING DEFECT
#### (Plaintiff v. Full-Fill Industries, LLC)

190.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

191.    The Cooking Spray is defective because the container was manufactured outside of its manufacturing specifications.

192.    The Cooking Spray contained manufacturing defects because the device differed from the design and specifications under which the device was intended to be manufactured.

193.    The Cooking Spray contained a manufacturing defect in that the metal thickness, depth of the u-shaped vent scoring and other components were not manufactured in conformity with the applicable design and specifications.

194.    The Cooking Spray manufacturing defect was present when it left Defendant's custody and control.

195.    The Cooking Spray reached Plaintiff without substantial change or modification to the Cooking Spray container.

196.    The foregoing wrongful acts or omissions by FULL-FILL INDUSTRIES, LLC

were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

## COUNT XIII – STRICT PRODUCTS LIABILITY – FAILURE TO WARN
### (Plaintiff v. Full-Fill Industries, LLC)

197.   Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

198.   At all times relevant hereto, FULL-FILL INDUSTRIES, LLC designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray.

199.   At all times relevant hereto, the dangerous propensities of the vented Cooking Spray containers were known to FULL-FILL INDUSTRIES, LLC, or were reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold Cooking Spray, and not known to ordinary consumer/user who would be expected to use the Cooking Spray.

200.    FULL-FILL INDUSTRIES, LLC had a duty to provide adequate, appropriate and accurate warnings on the Cooking Spray products they place into the stream of commerce, manufacture, fill, label, distribute, market, promote, and sell.

201.    FULL-FILL INDUSTRIES, LLC was responsible, in whole or in part, for the warnings and cautions on the Cooking Spray.

202.    FULL-FILL INDUSTRIES, LLC expected the Cooking Spray it was designing, manufacturing, filling, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

203.    At the time the Cooking Spray left the possession of FULL-FILL INDUSTRIES, LLC and the time the Cooking Spray entered the stream of commerce, the Cooking Spray was in a defective, unsafe and unreasonably dangerous condition.

204.    At the time the Cooking Spray left the possession of FULL-FILL INDUSTRIES, LLC and the time the Cooking Spray entered the stream of commerce, FULL-FILL INDUSTRIES, LLC failed to provide adequate, appropriate and accurate warnings to inform consumers and users of the Cooking Spray how to safely use the Cooking Spray and/or minimize the dangers and risks associated with the Cooking Spray.

205.    At all times relevant to this action, the Cooking Spray as distributed by DS CONTAINERS, INC.  was a defective and unreasonably dangerous product, as FULL-FILL INDUSTRIES LLC failed to provide appropriate and adequate warnings and instructions to render the products reasonably safe for their ordinary, intended, and reasonably foreseeable uses; in particular – the common, foreseeable and intended use of cooking sprays.

206.     At all times relevant to this action, FULL-FILL INDUSTRIES, LLC did in fact design, manufacture, fill, label, market, promote, supply, distribute and/or sell Cooking Spray to consumers, including Plaintiff and/or Plaintiff's Employer.

207.     At all times relevant to this action, the dangerous propensities of the vented Cooking Spray containers were known to FULL-FILL INDUSTRIES, LLC, or reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they designed, manufactured, filled, labeled, marketed, promoted, supplied, distributed and/or sold the respective Cooking Spray products, and not known to ordinary consumers who would be expected to use the product.

208.     At the time the Cooking Spray left the possession of FULL-FILL INDUSTRIES, LLC, the Cooking Spray was defective, unsafe and unreasonably dangerous due to providing inadequate and inaccurate Cooking Spray product warnings.  These defects include but are not limited to the following:

      a.     The Cooking Spray warnings fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

      b.     The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know a safe distance from a heat source to which the Cooking Spray can be safely placed;

      c.     The Cooking Spray warnings fail to appropriately inform users of the information necessary to understand and know the temperatures to which the Cooking Spray can be safely exposed without the risk of releasing the Cooking Spray's contents;

      d.     The Cooking Spray warnings fail to appropriately inform users of the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves/grills;

      e.     The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

42

  f.  The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the combustibility and flammability of the propellants used in the Cooking Spray;

  g.  The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings concerning the dangers and risks associated with the propellants used in the Cooking Spray;

  h.  The Cooking Spray warnings fail to provide adequate, appropriate and/or accurate warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking Spray product; and

  i.  Otherwise failed to provide adequate, appropriate and/or accurate warnings regarding the use of, risks and/or dangers associated with the Cooking Spray.

209. Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

210. Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

211. Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

212. Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

213. Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC knew the distance from a heat source to which the Cooking Spray could be safely placed without risk of releasing its contents.

214.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC knew the temperature to which the Cooking Spray could be safely exposed without risk of releasing its contents.

215.    At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

216.    Plaintiff followed the Cooking Spray warnings and precautions.

217.    Plaintiff could not have discovered any defect in the Cooking Spray warnings through the exercise of due care.

218.    Had adequate, appropriate and accurate warnings been provided, the incident and injuries would have been avoided.

219.    FULL-FILL INDUSTRIES, LLC as designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller of food products are held to the level of knowledge of an expert in their field.

220.     Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller:  FULL-FILL INDUSTRIES, LLC.

221.    The foregoing wrongful acts or omissions by FULL-FILL INDUSTRIES, LLC were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable

44

for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

**COUNT XIV – STRICT LIABILITY – NON-SPECIFIC DEFECT**
**(Plaintiff v. Full-Fill Industries, LLC)**

222.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

223.    FULL-FILL INDUSTRIES, LLC had a duty to design, manufacture, fill, test, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray that was not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, labeled, distributed, marketed, and sold.

224.    FULL-FILL INDUSTRIES, LLC did in fact design, manufacture, fill, test, label, market, promote, supply, distribute, sell and place into the stream of commerce Cooking Spray to Plaintiff and/or Plaintiff's Employer.

225.    FULL-FILL INDUSTRIES, LLC expected the Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing, selling and/or placing into the stream of commerce to reach, and it did in fact reach, consumers in the state of New York, including Plaintiff and/or Plaintiff's Employer, without substantial change in the condition.

226.    At the time the Cooking Spray left the possession of Defendant and the time Cooking Spray entered the stream of commerce, the Cooking Spray was in an unsafe, unreasonably dangerous and defective condition. These defects include but are not limited to the following:

   a.    In releasing its contents at regular temperatures and causing a flash fire, the Cooking Spray Can failed to perform as intended;

45

b.  The Cooking Spray Can design and/or manufacture is more prone to release its contents than other can designs;

c.  There are no other causes for the Cooking Spray Can for releasing its contents at regular temperatures and causing a flash fire that are not attributable to Defendant;

d.  The Cooking Spray Can failed to perform as intended, and subjected Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person; and/or

e.  The Cooking Spray Can otherwise possessed a condition which made it unreasonably dangerous for its intended and foreseeable use.

227.    At all times relevant to this complaint, Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately. There was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

228.    Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

229.    FULL-FILL INDUSTRIES, LLC as designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller of Cooking Spray are held to the level of knowledge of an expert in their field.

230.    Plaintiff did not have substantially the same knowledge as the designer, manufacturer, filler, tester, labeler, marketer, promotor, supplier, distributor and/or seller: FULL-FILL INDUSTRIES, LLC.

231.    The foregoing wrongful acts or omissions by FULL-FILL INDUSTRIES, LLC were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable

for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal affairs and duties for an indefinite period of time.

**COUNT XV – NEGLIGENCE**
**(Plaintiff v. Full-Fill Industries, LLC)**

232.    Plaintiff incorporates by reference paragraphs 1 through 25 of the Complaint at Law as if fully set forth herein.

233.    At all times relevant, it was the duty of FULL-FILL INDUSTRIES, LLC to exercise due care in designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and/or selling Cooking Spray products such that they would be reasonably safe for their intended use.

234.    FULL-FILL INDUSTRIES, LLC's negligence in the design, manufacture, testing, filling, labeling, marketing, promotion, supplying, distribution and/or sale of the Cooking Spray products includes but is not limited to the following:

    a.    Negligently failed to appropriately inform users of the dangers associated with the Cooking Spray;

    b.    Withheld and/or misrepresented material facts regarding the Cooking Spray's safety and fitness for use around stoves/grills and other heating sources when in fact they are not safe for use in these areas;

    c.    Misrepresented material facts regarding the Cooking Spray's safety by withholding information regarding adverse events and information about incidents of venting and injury caused by the cans;

    d.    After receiving post-marketing incident reports and/or testing data, FULL-FILL INDUSTRIES, LLC, knew, or in the exercise of reasonable care, should have known that there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the Cooking Spray product and failed to communicate or warn users of this information;

e.      Failed to halt the use of dangerous, flammable and/or combustible propellants in Cooking Spray when it knew they were dangerous;

f.      Continued to use dangerous, flammable and/or combustible propellants in Cooking Spray in the United States when it knew they were dangerous and had been prohibited from using the same propellants in cooking spray containers outside the United States;

g.      Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the Cooking Spray product would use the product in the kitchen and in close proximity to stoves, grills and heat sources;

h.      Negligently designing and manufacturing the Cooking Spray container making it capable of releasing its contents at temperatures and pressures lower than DEFENDANTS' specifications and/or performance standards allow;

i.      Negligently designing and manufacturing the Cooking Spray container making it capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

j.      Negligently designing and manufacturing the Cooking Spray container so that it is unable to withstand temperatures to which the Cooking Spray container will foreseeably to be exposed during use and/or storage;

k.      Negligently designing the Cooking Spray warnings so that they fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

l.      Failed to provide adequate warnings concerning the risk of venting, risk of fire, and risk of burn injuries;

m.      Failed to provide adequate warnings concerning the types of propellants in the Cooking Spray product including isobutane and propane;

n.      Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the Cooking Spray product;

o.      Failed to provide adequate instructions to persons cooking with and around their Cooking Spray products;

p.      Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around Cooking Spray products;

q.      Failed to conduct adequate testing on their Cooking Spray products to determine the venting hazards to which consumers and individuals such as

Plaintiff may be exposed to while cooking with and/or around their products;

r.      Failed to monitor and analyze what post-marketing reports observed with regard to individuals cooking with and around DEFENDANTS' Cooking Spray products and/or substantially similar products;

s.      Used a canister which was not designed and/or manufactured to withstand a pressure of at least 270 psig at 130 degrees Fahrenheit without bursting in violation of 49 C.F.R. §178.33a(3)(ii); and

t.      Were otherwise negligent in the design, manufacture, marketing, advertisement, promotion, sale and distribution of the Cooking Spray products.

235.    FULL-FILL INDUSTRIES, LLC knew or had reason to know that Plaintiff and/or Plaintiff's Employer, as a member of the general public for whose use the Cooking Spray was placed into interstate commerce, would be likely to use or be around the Cooking Spray in a manner described in this Complaint.

236.    FULL-FILL INDUSTRIES, LLC knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's presence in the vicinity of and/or foreseeable use of the Cooking Spray, which danger would not be obvious to the general public.

237.    Plaintiff used the Cooking Spray for its intended purpose, i.e. cooking spray, and stored it appropriately, and there was no other reasonable cause of the Cooking Spray's failure to properly perform other than the Cooking Spray product being defective.

238.    FULL-FILL INDUSTRIES, LLC tested DOT-2Q bottom vented cans/lots filled for Conagra and others prior to distribution.

239.    DS CONTAINERS, INC. produced DOT-2Q bottom vented cans/lots for Conagra and others that were tested and determined to be non-compliant or were outside of the content specification ratio requirements.

240.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures

than is allowed by the manufacturing specifications and tolerances.

241.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

242.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

243.    Prior to the incident set forth herein, FULL-FILL INDUSTRIES, LLC was aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

244.    Plaintiff could not have discovered any defect in the Cooking Spray through the exercise of due care.

245.    FULL-FILL INDUSTRIES, LLC as designer, manufacturer, tester, filler, labeler, marketer, promoter, supplier, distributer and seller of food products are held to the level of knowledge of an expert in their field.

246.    Plaintiff did not have substantially the same knowledge regarding the dangers of the Cooking Spray as the designer, manufacturer, filler, labeler, marketer, promoter, supplier, distributor and seller:  FULL-FILL INDUSTRIES, LLC.

247.    The foregoing wrongful acts or omissions by FULL-FILL INDUSTRIES, LLC were a substantial factor in bringing about the Cooking Spray canister explosion which caused Plaintiff to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish. Plaintiff was hindered and prevented from Plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable

for substantial sums of medical care and services while endeavoring to become cured and healed

of said injuries and will continue to expend and become liable for additional costs for future

medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings.

Furthermore, Plaintiff was unable to and will in the future be unable to attend to Plaintiff's normal

affairs and duties for an indefinite period of time.

## IV.   PRAYER FOR RELIEF

Plaintiff requests the following:

1.   General and special damages to the maximum extent allowed under the Constitution, statutory and common law of the United States and the State of New York;

2.   Punitive damages; and

3.   Such other relief as the court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED,

CAROL THOMAS,

By: S/Theresa M. Walsh
Theresa M. Walsh, Esq.
Michael C. Scinta, Esq.
BROWN CHIARI LLP
2740 Walden Avenue
Buffalo, New York 14225
PH: (716) 681-7190
FAX: (716) 681-8136
twalsh@brownchiari.com
mscinta@brownchiari.com

Peter J. Flowers, Esq. (*pro hac vice* to be filed)
Frank V. Cesarone, Esq. (*pro hac vice* to be filed)
Meyers & Flowers, LLC
3 N. 2nd Street, Suite 300
St. Charles, IL 60174
PH: (630) 232-6333
FAX: (630) 845-8982
pjf@meyers-flowers.com
fvc@meyers-flowers.com