UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CAROL THOMAS,

              Plaintiff,

v.

CONAGRA FOODS, INC., CONAGRA BRANDS, INC., DS CONTAINERS, INC., and FULL-FILL INDUSTRIES, LLC,

              Defendants
_____

**DECISION AND ORDER**

6:20-CV-06239-EAW-MJP

## INTRODUCTION

Plaintiff Carol Thomas ("Plaintiff") commenced the instant action on or about April 14, 2020, asserting products liability claims for design defect, manufacturing defect, failure to warn, non-specific defect, and negligence against ConAgra Foods, Inc. ("CA Foods"), ConAgra Brands, Inc. ("CA Brands"), DS Containers, Inc. ("DS"), and Full-Fill Industries, LLC ("Full-Fill") (collectively "Defendants"), arising out of the combustion of a cooking spray canister and resulting injuries to Plaintiff. (Dkt. 1). Presently before the Court is Defendants' joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or alternatively, seeking summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. 69). For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case. The Court will provide a summary of certain background information relevant to its evaluation of the pending motion.

Plaintiff alleges that DS manufactured "vented DOT-2Q cooking spray cans" for CA Foods and CA Brands; that Full-Fill filled, assembled and packaged "vented DOT-2Q cooking spray cans" for CA Foods and CA Brands; and that CA Foods and CA Brands sold and distributed various branded and private label cooking sprays to retailers throughout the United States. (Dkt. 1 at ¶¶ 14, 15, 18). Plaintiff alleges that Defendants knew that vented DOT-2Q cooking spray cans released their contents at lower temperatures and pressure than is allowed by manufacturing specifications and tolerances and than as occurred with other cooking spray can designs. (*Id.* at ¶¶ 31-34, 103-106, 183-186). Plaintiff alleges that she was burned and severely injured "by a can of Member's Mark Cooking Spray" that Defendants had designed, developed, manufactured, tested, assembled, labeled, filled, packaged, marketed, sold and distributed. (*Id.* at ¶ 1).

However, contrary to the allegations in the complaint, Plaintiff testified during her deposition that she recalled that the cooking spray canister's label read "Daily Chef" and that she had not told anyone that the cooking spray at issue was Member's Mark brand. (Dkt. 69-5 at 2-3). On December 17, 2021, Plaintiff moved for leave to amend the complaint to change the references in the complaint to Daily Chef as opposed to Member's Mark. (Dkt. 48). On April 21, 2022, United States Magistrate Judge Mark W. Pedersen issued a report and recommendation that the Court deny Plaintiff's motion to amend the complaint (Dkt. 59), which the Court adopted (Dkt. 62). On October 25, 2022, Defendants filed the pending motion. (Dkt. 69).

## DISCUSSION

### I. Motion to Dismiss on Mootness Grounds

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Like all Article III courts, this Court may only hear "cases and controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990) ("Article III, of course, gives the federal courts jurisdiction over only 'cases and controversies. . . .'"). While the Constitution does not define "case" or "controversy," "the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U.S. at 155. The Second Circuit has explained:

> To satisfy the requirements of Article III standing, plaintiffs must demonstrate "(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."

*Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).

Defendants' mootness argument is tied to its merits argument on the summary judgment motion. In other words, according to Defendants' logic, because Plaintiff alleged that she was injured by a canister of cooking spray bearing the brand name "Member's Mark" but in reality she was injured by a canister of cooking spray bearing the brand name "Daily Chef," there is no longer a live case or controversy such that Plaintiff's claims are now moot, and the Court does not have jurisdiction to hear the case under Article III of the United States Constitution. Plaintiff responds that her allegations are not dependent on the brand name printed on the canister's label, and dismissal is not warranted. The Court agrees with Plaintiff that her claims are not moot.

"A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action."). "Thus, 'under the mootness doctrine, if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case, rather than issue an advisory opinion.'" *Farez-Espinoza v. Napolitano*, No. 08 CIV. 11060(HB), 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004)).

Defendants argue that this case is moot because Plaintiff's misidentification of the cooking spray brand in the complaint means Plaintiff is unable to prove her claims as alleged. But as discussed in further detail below in connection with the summary judgment

motion, the Court is not persuaded that the misidentification of the brand of cooking spray renders Plaintiff unable to pursue her damages claims under the circumstances of this case.

Defendants' theory would require the Court to adopt an artificially narrow reading of the complaint. Admittedly, Plaintiff alleges that she was burned and severely injured "by a can of Member's Mark Cooking Spray that Defendants had designed, developed, manufactured, tested, assembled, labeled, filled, packaged, marketed, sold, and distributed." (Dkt. 1 at ¶¶ 1, 2, 13). However, Plaintiff further identifies the canister type at issue as a vented DOT-2Q cooking spray can (*id.* at ¶¶ 15, 18, 31-34, 59-62, 86-89, 103-08, 132-35, 160-166, 168-69, 171-72, 183-86, 209-12, 238-43); that DS manufactured vented DOT-2Q cooking spray cans for CA Foods and CA Brands (*id*. at ¶ 15); that Full-Fill filled, assembled, and packaged vented DOT-2Q cooking spray cans for CA Foods and CA Brands (*id*. at ¶ 18); that Defendants knew that vented DOT-2Q cooking spray cans released their contents at lower temperatures and pressure than allowed by manufacturing specifications and tolerances and than as occurred with other cooking spray can designs (*id*. at ¶¶ 31-34, 103-106, 183-186); that the canister that injured Plaintiff left the possession of CA Foods and CA Brands in a defective, unsafe, and unreasonably dangerous condition (*id*. at ¶ 30); and that Defendants "designed, manufactured, tested, filled, labeled and/or sold the canister of Cooking Spray that exploded and is at issue in this case" (*id*. at ¶ 19).

In other words, notwithstanding the apparent misidentification of the brand name of cooking spray alleged, Plaintiff alleges that the vented DOT-2Q cooking spray canister exploded due to defective design and manufacturing, which caused her injuries, and that Defendants tested the can, the can released its contents at a lower temperature and pressure

than prescribed in manufacturing tolerances, and Defendants knew of the deficiency alleged. Plaintiff further alleges that Defendants failed to provide adequate warnings of these dangers. (*Id*. at ¶¶ 47-71, 120-144, 197-221). Plaintiff does not allege that the brand name itself constituted a design flaw or contributed in any way to her injuries.

As a result, the Court concludes that Plaintiff's misidentification in the complaint of the brand of cooking spray does not render her claims moot. Therefore, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

## II.  Motion for Summary Judgment

### A.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103

(W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.  Summary Judgment is Not Warranted.

Defendants argue that Plaintiff "concedes that Member's Mark and Daily Chef have different brand names, labels, and formulations. (Dkt. 70-1 at ¶¶ 5-6). And Plaintiff cannot reasonably dispute that the products were manufactured at different, and non-overlapping times. (*Id.* at ¶ 7)." (Dkt. 73 at 3). But this is not an accurate reflection of the record. Rather, Plaintiff contends that the relevant labels on the cooking sprays—"the warnings and directions for use"—were identical; that the propellant for both cooking sprays—which is the relevant formulation at issue in this action—was identical; and that both cooking sprays were sold at Sam's Clubs during the latter part of 2016. (See Dkt. 70-1 at 2). Thus, even if Plaintiff were restricted to introducing evidence that is common to both brands, she has raised genuine issues of fact as to whether the relevant warning language on the

cooking spray canister is sufficient to support her failure to warn claim, whether the canister design and formulation of the propellant contributed to her injuries, and whether the cooking spray at issue was sold at Sam's Clubs during the latter part of 2016.

On that last point, Defendants' own submissions raise questions in that regard, with the declaration from Joseph Epps stating that "Conagra" began supplying Member's Mark cooking spray to Sam's Club in "approximately September 2016," (Dkt. 69-3 at ¶ 4), and that it supplied Daily Chef cooking spray to "a limited number" of Sam's Club stores until "late-2016" (*id.* at ¶ 3).[1]  Moreover, while Mr. Epps states that the two cooking sprays "do not contain the same formula or the same product label," (*id.* at ¶ 5), the evidence in the record is that the warning labels were, in fact, the same (Dkt. 80; Dkt. 81) and that the two cooking sprays used the same hydrocarbon propellant known as A-55 (Dkt. 74 at 2). Additionally, Defendants appear to concede that the two cooking sprays used the same two-piece bottom vented canister (211 x 713 container). (*Id.*).

Thus, the crux of the issue as to whether summary judgment is appropriate appears to be whether the brand of the cooking spray is a material element of Plaintiff's causes of

---

[1] Defendants contend that it is misplaced for Plaintiff to rely on what was sold at Sam's Club in 2016 because the incident occurred in April 2017. (Dkt. 73 at 7 n.3). However, defense counsel introduced two receipts as exhibits during Plaintiff's deposition, which stated that Plaintiff's employer at the time of the incident purchased cooking spray from Sam's Club on July 27, 2016, and August 4, 2016, and Plaintiff testified that her employer did not purchase cooking spray from August 4, 2016 to the date of the incident. (Dkt. 69-2 at 58-60, 63-65).  Defendants do not cite to any other evidence indicating a date of purchase.  Likewise, to the extent Defendants attempt to suggest that they may not have been responsible for the supply of Daily Chef cooking spray to Sam's Club (*see* Dkt. 69-3 at ¶ 8; Dkt. 74 at 2), that argument is not developed by Defendants with their pending motion.

action. Plaintiff cannot establish that the cooking spray that injured her was Member's Mark—indeed, she has conceded otherwise. Thus, if the brand of cooking spray is a material element, then there is no issue of fact to be tried by a jury.

Defendants have cited no case standing for the principle that the brand of the product is a material element of the cause of action under the circumstances present here—where the canister design with a particular propellant and failure to provide adequate warnings allegedly led to personal injuries. In *Cavanagh v. Ford Motor Co.*, No. 13-CV-4584 (JS)(SIL), 2017 WL 2805057 (E.D.N.Y. June 9, 2017), *report and recommendation adopted*, 2017 WL 2804934 (E.D.N.Y. June 28, 2017), a case relied on by Defendants, the plaintiff alleged that he was injured in a fall from the cab of a 2000 Ford F-650 Altec TA 41 46' Bucket Truck ("2000 Ford F-650"), based upon defectively designed steps. *Id.* at *1-2. However, at his deposition the plaintiff "radically alter[ed] the version of events leading to his injury" by testifying that the injury had nothing to do with the truck's steps, and he further testified that the truck was not the 2000 Ford F-650 previously identified, but rather one approximately thirty years older. *Id.* at *2. The court granted summary judgment dismissing the plaintiff's claims because he was unable to identify "with requisite specificity the 2000 Ford F-650 as the vehicle responsible for [his] injuries." *Id.* at *5. As noted by the court, the plaintiff was "unable to identify either the specific truck from which he fell or the model or year of the allegedly defective product." *Id.* at *6. By contrast, in this case, Plaintiff has identified the allegedly defective canister design that, when combined with the hydrocarbon propellant and failure to provide adequate warnings, purportedly led to her injuries.

- 9 -

In *Tuosto v. Philip Morris USA, Inc.*, 672 F. Supp. 2d 350 (S.D.N.Y. 2009), another case relied upon by Defendants, the court dismissed with leave to amend the plaintiff's product liability claims based upon an allegedly defectively-designed cigarette where the complaint did not identify the cigarette brand at issue, because New York law required for a claim involving cigarettes that "any safer design would be equally satisfying to consumers as the allegedly unreasonably safe design" and "[w]ithout a specified design, it is impossible to determine if a safer design would be 'as acceptable to consumers.'" *Id.* at 366. By contrast, in this case, New York's unique law concerning cigarettes is not at issue, and Plaintiff has identified the particular defective design at issue—the two-piece bottom vented canister filled with a hydrocarbon propellant.

Similarly, *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157 (S.D.N.Y. 2003), relied upon by Defendants, is inapposite, as that case dealt with whether class certification should be granted for healthcare workers suffering accidental secondary needlesticks where the proposed class consisted of over 200 different products, including eighty syringe and needle device combinations, forty hypodermic needles, thirty-one syringes, and twenty-seven blood collection sets, needles, and holders. *Id.* at 165. The case had nothing to do with whether the particular brand of a product was a material element of a products liability claim.

Defendants raise several other issues in support of their motion, but those issues were raised for the first time in their reply papers and are not sufficiently developed. For example, relying on *S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11 (2d Cir. 2014), Defendants argue that a design defect claim will not stand if the only alternative is an

- 10 -

outright ban (*see* Dkt. 73 at 4), but a reasonable view of the complaint does not support a conclusion that Plaintiff is seeking an outright ban (*see*, *e.g.*, Dkt. 1 at ¶ 30(i) (alleging that safer design was available)), and in any event, if Defendants sought summary judgment on this ground it should have been raised in the initial motion papers, *see*, *e.g.*, *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 701 (W.D.N.Y. 2018) (court need not consider argument in support of dismissal raised for first time in reply).  Similarly, to the extent Defendants argue that the Court should disregard exhibits relied upon by Plaintiff that were purportedly obtained in violation of protective orders (*see* Dkt. 73 at 8), there has been no showing that Plaintiff was bound by protective orders issued in other cases (to which Plaintiff was presumably not a party) or that Plaintiff or her counsel engaged in any conduct in violation of those protective orders.  It is not clear how Plaintiff came to possess the subject documents, and on this record the Court will not take the drastic sanction of disregarding or striking the evidence, as apparently urged by Defendants.

In the end, Defendants have not submitted any authority from which the Court can conclude that Plaintiff would not be permitted to testify or present evidence at trial that the label on the canister at issue bore the brand name "Daily Chef," and the Court has not ruled on any motions *in limine* excluding such testimony or other evidence.  Defendants have also not shown that, even if Plaintiff is precluded from introducing the Daily Chef brand name, a reasonable factfinder could not find that Defendants are responsible for the vented DOT-2Q cooking spray canister alleged in the complaint coming into Plaintiff's possession in a defective form and that the canister caused Plaintiff's injuries.  The Court is not persuaded by Defendants' contention that, at trial, a jury would evaluate the risk and utility

of "Member's Mark cooking spray—not the risk of bottom vented containers or flammable propellants as used in the aerosol cooking spray in general." (Dkt. 73 at 3). In other words, on this record, the brand name of the particular cooking spray is not dispositive of the merits of Plaintiff's claims, and thus, summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion (Dkt. 69) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 23, 2023
         Rochester, New York